# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2016, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy E. Stucky
Stucky, Lauer & Young, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory R. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of S.P. and A.P. (Minor Children), and | October 26, 2016 |
| C.P. (Mother), | Court of Appeals Case No. 02A04-1604-JT-752 |
| *Appellant-Respondent,* | Appeal from the Allen Superior Court |
| v. | The Hon. Charles F. Pratt, Judge |
| The Indiana Department of Child Services, | Trial Court Cause Nos. 02D08-1506-JT-56 02D08-1506-JT-57 |
| *Appellee-Petitioner.* | |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent C.P. ("Mother") appeals the juvenile court's order terminating her parental rights to S.P. and A.P. (collectively, the "Children"). She raises the following restated issue on appeal: whether the Department of Child Services ("DCS") presented sufficient evidence to support the termination of her parental rights to the Children. Specifically, Mother contends that the juvenile court erroneously found that (1) there was a reasonable probability that the conditions resulting in the removal of the Children would not be remedied, (2) adoption was a satisfactory plan for the Children, and (3) termination was in their best interests. Concluding that the evidence is sufficient evidence to support the termination order, we affirm.

# Facts and Procedural History

[2] Mother is the biological parent of S.P., who was born on June 6, 2010, and A.P., who was born on October 3, 2012.[1] On July 11, 2013, DCS filed petitions alleging the Children to be children in need of services ("CHINS") due to Mother's neglect. DCS removed the Children and placed them in foster care. On August 5, 2013, DCS filed amended CHINS petitions stating that, among other things, Mother was unable to provide the Children with appropriate

---

[1] The Children have different biological fathers. The parental rights of the fathers of S.P. and A.P. were also terminated, but they do not participate in this appeal.

housing and care and had a substance-abuse problem.  At a hearing on August 8, 2013, the Children were determined to be CHINS based in part to Mother's admission on DCS's allegations.  Specifically, Mother admitted that:

> On or about June 2013 to about July 9, 2013, and all times relevant; [Mother] has been unable or unwilling to personally provide care and supervision for [the Children].
>
> On or about June 2013, July 2013, and all times relevant; [Mother] has been unable or unwilling to personally provide independent or sustainable housing for [the Children].
>
> ….
>
> On or about June 2013 or July 2013 [Mother] placed [A.P.] in an inappropriate living environment.
>
> On or about July 6, 2013 [Mother] smoked marijuana.
>
> [Mother] has a criminal history that involves convictions or plea agreements regarding illegal drugs or alcohol.
>
> [Mother] does not have the custody of her two oldest children.
>
> [Mother] has not had independent or sustainable housing for about three years.
>
> [Mother] is addicted or has substance abuse issues with alcohol or illegal drugs.

DCS Ex. 9 pp. 2, 3 ¶4(A).  The juvenile court subsequently established a Parent Participation Plan ("PPP") specifying various services in which Mother was to participate and complete in order to effectuate reunification with her Children. At a review hearing on October 29, 2014, the juvenile court found that Mother had not complied with the ordered services in the PPP.  Consequently, the

juvenile court concluded that Mother had not demonstrated an ability to benefit from the services being offered to her.

[3] At the March 4, 2015 permanency hearing, the court again found that Mother had not participated in any of the ordered services. Specifically, the juvenile court found that Mother had not participated in any of the home-based services or therapy, tested positive for illegal substances, did not complete the substance-abuse assessment, failed to maintain communication with DCS, and she did not regularly visit the Children. Based upon this information, the juvenile court found that it was in the Children's best interest to change the permanency plan to termination of parental rights. On July 7, 2015, DCS filed its termination petitions.

[4] Although Mother failed to personally attend the evidentiary hearing on the termination petitions on December 8 and 15, 2015, she was represented by counsel. At the hearing, the service providers testified that termination of parental rights is in the best interests of the Children. Based upon all of the evidence, the juvenile court found that termination of parental rights is in the Children's best interests. On March 9, 2016, the juvenile court entered an order terminating Mother's parental rights. In doing so, the juvenile court made the following pertinent specific findings:

> 9. A Periodic Review Hearing was held on October 29, 2014, and the Court found that the Mother was not in compliance with the Dispositional Decree. The children were continued in licensed foster care.

10. A Permanency Hearing was held on March 4, 2015. The Court found that the Mother . . . [was] not incompliance [sic] with the Dispositional Decree. The Mother had not participated in home based services or therapy. She had tested positive for illegal substances and had not regularly visited the children . . . The Court adopted a Permanency Plan that provided for the termination of parental rights.

11. A Periodic Review Hearing was held on August 31, 2015, at which the Court found that the Mother did not have appropriate housing and had only visited the children on two (2) occasions since April 2015. The children were continued in licensed foster care.

12. From the testimony of Dockside Services therapist, Melissa Bortom, the Court finds that the Department referred the [M]other to that agency for a drug and alcohol assessment. Ms. Bortom met with the [M]other on one (1) occasion in October 2014. A new referral was issued in January 2015 and, again, the [M]other only met with the therapist on one (1) occasion. A third referral was made in September 2015. However the case was closed due to the [M]other's noncompliance.

13. From the testimony of Kimberly Schenk of Whitington Home and Services the Court finds that the Department referred the Mother for supervised visitation with her children. Between October 2014 and December 2014 the [M]other only saw the children two (2) times. Between March 2015 and October 2015, the Court finds from the testimony of Heather Plastner that the [M]other only exercised three (3) visits.

14. The [M]other has not completed home based services. Nor according to the testimony of Robert Young, Jr. of C.A.P., Inc. did she complete a drug and alcohol assessment.

15. In addition to the forgoing instances of the Mother's noncompliance Department case manager Beverly Marcus testified and the Court finds that Mother did not complete family counseling nor did she comply with referrals for medication management through Park Center.

....

18. The child[ren]'s Court Appointed Special Advocate has also concluded that the child[ren]'s best interests are served by the termination of parental rights. In support of her conclusion she cites the fact that Mother has not completed any of her services required under the Dispositional Decree. The . . . Mother [has] not regularly visited the child[ren].

Mother's App. pp. 60, 61, 65, 66.

[5] As of the date of the termination hearing, the Children were placed with their Grandmother and had lived there since November of 2015. Based upon the testimony of the DCS family case manager ("FCM"), the Grandmother already has custody of Mother's two eldest children and is willing to adopt the Children.

# Discussion and Decision

[6] This court has long had a highly deferential standard of review in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). When reviewing a termination of parental rights case, we will consider only the evidence and reasonable inferences that are most favorable to the judgment. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Thus, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.* We will only set aside the court judgment terminating a parent-child relationship if it is clearly erroneous. *In re B.J.*, 879 N.E.2d 7, 14 (Ind. Ct. App. 2008).

[7] The traditional right of a parent to establish a home and raise her children is protected by the Fourteenth Amendment to the United States Constitution.

*Bester v. Lake Cnty. Office of Family and Children*, 839 N.E.2d 143, 145 (Ind. 2005). Furthermore, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id.* However, parental rights are not absolute and the law allows for the termination of such rights when a parent is unable or unwilling to meet her responsibilities as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans denied*. The purpose of terminating parental rights is to protect the child, not to punish the parent. *Id.* The juvenile court may terminate the parental rights if the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child has suffered from irreversible harm. *Id.*

Before an involuntary termination of parental rights may occur, DCS is required to prove by clear and convincing evidence that:

> (A) one (1) of the following exists:
>
>> (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
>>
>> (ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
>>
>> (iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS's burden of proof for establishing these allegations in a termination case is one of "clear and convincing evidence." *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009).

[9] Here, Mother does not challenge any of the juvenile court's findings. Mother, however, argues that DSC failed to submit sufficient evidence to support the juvenile court's findings and conclusions that (1) there was a reasonable probability that the conditions which resulted in the removal of the Children would not be remedied, (2) there was a satisfactory plan for the Children, and (3) termination of Mother's parental rights was in the Children's best interests.

## I.  Conditions Resulting in Removal Not Likely to Be Remedied

[10] Mother argues that there is insufficient evidence to support the juvenile court's conclusion that the conditions resulting in the Children's removal and continued placement outside of her care will not be remedied. However, a

juvenile court may properly consider evidence of the parent's drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 199 (Ind. Ct. App 2003). Additionally, a juvenile court can "reasonably consider the services offered by [DCS] to the parent and the parent's response to those services." *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)). The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change.*" In re Involuntary Termination of Parent-Child Relationship of Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[11] Here the evidence showed that Children were originally removed from Mother's care in July of 2013 due to allegations of neglect. The Children were later adjudicated to be CHINS and Mother was ordered to participate in, among other things, supervised visits; refrain from using illegal substances; complete a substance-abuse assessment; find and maintain suitable housing and employment; and participate in case management services. The Children continued to be placed in foster care over the course of the next three years after their removal from Mother's care in 2013.

[12] During that time, the evidence shows that extensive services were offered to Mother to assist her to reunite with the Children, obtain employment, and find and maintain suitable housing. However, according to testimony by the service providers, Mother did not complete the substance-abuse assessment despite

having been given numerous referrals. Consequently, she did not participate in any substance-abuse treatment despite her admission that she had a problem. The evidence shows that Mother also tested positive in numerous drug screens. Moreover, based upon the evidence, Mother failed to consistently participate in and benefit from the homebased services and counseling to help her with parenting, employment, and securing stable housing. According to testimony by the service providers, parenting education could not be made available to Mother due to inability to comply with the other services. While Mother did request medication management services for depression, the record shows that she never followed through with any of the services and referrals that were offered to her. Mother cancelled or failed to attend the vast majority of the supervised visits with the Children. When she did attend a visitation, service providers described the visits as "very rough visits" because mother would arrive unprepared and was unable to control the Children's behavior. Tr. p. 97. The juvenile court eventually concluded that the services were ineffective due to the Mother's non-compliance throughout the course of the CHINS cases. Based upon the ample evidence regarding Mother's non-compliance with the court-ordered services, we conclude that Mother has not sustained her burden to show that the juvenile court's determination in this regard was clearly erroneous.

## II.   Adoption as a Satisfactory Plan

[13]   Next, Mother argues that DCS did not have a satisfactory plan for the Children because transfer of custody or open adoption with Grandmother were better

permanency options. Mother, however, does not provide further explanation regarding her proposed permanency options. According to the plan, the Children would be adopted by the Grandmother who already has custody of Mother's two oldest children. Moreover, Mother herself states that she is amenable to a "permanent transfer of custody" to the Grandmother. This evidence supports the juvenile court's finding that an adoption with Grandmother was a satisfactory plan. *See generally In re A.K.*, 755 N.E.2d 1090, 1098 (Ind. Ct. App. 2001).

## III.   Termination in Children's Best Interests

[14]   Finally, Mother argues that termination is not in the best interests of the Children because there is a "readily available and currently existing permanent family placement" for the Children in Grandmother's home. Appellant's Br. p. 16. Mother further argues that termination was not in the Children's best interests "in light of the close and bonded relationship between them as established by the evidence of record." Appellant's Br. p. 16. As stated above, Mother has indicated that an open adoption or some form of custody arrangement would better serve the interests of the Children.

[15]   However, as outlined above, DCS has demonstrated that Mother has failed to remedy the conditions that led to the Children's removal. Mother has not secured suitable housing. Mother continues to use illegal substances. Mother has not successfully completed the services and assessments outlined in the PPP. Mother's lack of constancy, compliance, and follow-through create

significant uncertainty as to when, if ever, Mother would be capable of providing for S.P. and A.P. In addition, the Children's Court Appointed Special Advocate testified that termination of Mother's parental rights was in the Children's best interests. Such testimony is sufficient to support the juvenile court's conclusion in this regard. *See In re A.B.*, 887 N.E.2d 158, 170 (Ind. Ct. App. 2008).

[16] In light of the juvenile court's findings, considered with the Children's need for consistency and permanency, we conclude that the evidence is sufficient to establish that termination of Mother's parental rights is in S.P. and A.P.'s best interests and the juvenile court did not error in finding such. Mother's claim to the contrary is no more than a request for this court to reweigh the evidence, which we will not do. *See In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004).

[17] The judgement of the juvenile court is affirmed.

Pyle, J., and Altice, J., concur.